# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

CLIVENS CELESTIN,

                               Plaintiff,

        vs.                           9:15-CV-541
                                          (DNH/ATB)

DAVID ROCK, et al.,

                               Defendants.

---

CLIVENS CELESTIN, Plaintiff pro se
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and LOCAL RULES N.D.N.Y. 72.3(c). In this civil rights complaint,[1] plaintiff alleges that defendants have violated his First Amendment right to practice his religion and his rights under the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), 42 U.S.C. § 2000cc-1(a) by denying him two Seder meals during Passover on April 6, 2012 and April 7, 2012, in part, because inmates confined to the Special Housing Unit ("SHU") were not allowed to "congregate." (Compl. ¶¶ 14-29,

---

[1] This complaint was originally filed in *Weathers v. Travers*, No. 9:12-CV-1582. There were several plaintiffs in 12-CV-1582, who filed a complaint together alleging violations of their religious rights in addition to their Eighth Amendment rights. Mr. Celestin was one of those plaintiffs. On June 19, 2014, the court ordered some of the plaintiffs to submit individual complaints for filing. Mr. Celestin submitted this as his amended complaint. (Dkt. No. 126 in 12-CV-1582). On May 1, 2015, the court ordered the Clerk to open a new action for each plaintiff who had submitted an amended complaint. (Dkt. No. 152 in 12-CV-1582). On the same date, the Clerk opened this action and filed Mr. Celestine's amended complaint as the original complaint in the instant action. (Dkt. Nos. 1, 5-7). 12-CV-1582 was subsequently closed, and judgment was entered, dismissing the action without prejudice. (Dkt. No. 153 in 12-CV-1582).

35) (Dkt. No. 1). In his complaint, plaintiff sought declaratory and monetary relief. (Compl. at CM/ECF pp.19-20).

Presently before the court is the defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 35). Plaintiff has responded in opposition to the motion. (Dkt. Nos. 38, 39). For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint.

## DISCUSSION

## I. Facts and Contentions

Plaintiff states that when Passover began on April 6, 2012 at sundown, plaintiff and other[2] Jewish inmates who were confined in SHU, asked defendant Officers Patterson and Forbes about the Seder meal. (Compl. ¶¶ 15-17). These were the two officers who were in charge of serving dinner to the inmates that evening. (*Id.* ¶ 15). The inmates attempted to explain that the Seder meals were supposed to be served with the Passover meal, but defendants Patterson and Forbes stated that "it wasn't their problem." (*Id.*) Plaintiff claims that another Jewish inmate – Mr. Weathers – showed the "memo" regarding Passover, which Mr. Weathers had obtained from Albany, to defendants Patterson and Forbes, but that these defendants only made disparaging remarks. (*Id.* ¶ 16).

---

[2] Plaintiff references "other" Jewish inmates. (Compl. ¶ 16). Although this case is only about plaintiff's own issues, as this court will discuss below, it has previously decided the identical claim filed by one of the "other" inmates to whom Mr. Celestin refers in the instant complaint.

Plaintiff stated that he looked at his Passover tray,[3] and he noticed that it contained iodized salt, which was not appropriate for Passover. (*Id.* ¶ 18). He also noticed that hot water for the "Coffee Pack" was also missing from his tray. (*Id.* ¶ 19). When plaintiff and the other Jewish inmates told defendant Forbes and Patterson about this problem,[4] the defendants disregarded their additional complaints. (*Id.*)

Plaintiff states that five minutes later, defendant Sergeant Debya was making rounds. All the Passover participants were complaining about the Seder meal, the salt, and the lack of hot water. (*Id.* ¶ 20). Plaintiff states that when defendant Debya reached plaintiff's cell, plaintiff complained to him about "his officers['] conduct" and asked defendant Debya to inform someone that the Jewish inmates' food was "not according to Albany's Memo." (*Id.*) Defendant Debya informed all the Jewish inmates that they had received "everything according to the kitchen at Upstate," and he refused to look at the Memorandum that they were trying to show him. (*Id.* ¶ 21). After the meal, when defendants Forbes and Patterson came to pick up the trays, plaintiff asked them to call the kitchen and "clear up the Passover issues," but "he" [sic][5] refused. (*Id.* ¶ 22).

Plaintiff states that the same thing happened the following night – April 7, 2012. (*Id.* ¶¶ 27-40). On April 7, 2012, the defendants in charge of serving meals were

---

[3] Plaintiff did receive a Passover meal. He did not receive the additional items required for the Seder. The court will use plaintiff's terminology and will refer to the "Seder meal."

[4] The problem with the salt and the hot water was separate from the Seder issue.

[5] Plaintiff begins the paragraph referring to both defendants Forbes and Patterson, but then at the end of the paragraph states that "he" stated that "he" was not calling anyone. It is unclear to whom plaintiff was referring.

Kroeger and Demers. (*Id.* ¶ 28). When plaintiff mentioned the problem with the Seder meals, these defendants instructed him to "write the mess hall about any issues," and that there was no way that plaintiff was going to be able to correct the "intentional refusal . . . by Upstate . . . Staff." (*Id.* ¶ 29). These officers were also shown the "Memo" from Albany, and they were told about the salt and the hot water. (*Id.* ¶¶ 30, 31). Plaintiff states that Officer Demers told him that it was the mess hall's fault, and that he could not do anything about it. (*Id.* ¶ 31). Defendants Kroeger and Demers also told plaintiff to "write a grievance" about the situation. (*Id.* ¶ 32).

Plaintiff alleges that defendant Debya also made rounds on April 7, 2012 and arrived on the housing unit shortly after the inmates received their Passover meals. (*Id.* ¶ 34). Plaintiff claims that he informed defendant Debya that the inmates were deprived of their Seder meals for a second day. (*Id.*) Defendant Debya allegedly informed plaintiff that no inmates in the Special Housing Unit ("SHU") were allowed to participate in the Seder because "inmates would have to congregate." (*Id.* ¶ 35). Plaintiff states that he asked defendant Debya who was responsible for refusing the Jewish inmates their Seder meals, and Debya responded that it was "the Superintendent." (*Id.* ¶ 36).

Plaintiff states that he attempted to explain to defendant Debya that the Seder ritual can be practiced on a "personal basis," but Debya responded that the Superintendent was "the boss," and "what he says goes." (*Id.* ¶¶ 37-38). Plaintiff ultimately filed grievances which were consolidated with grievances filed by other Jewish inmates in SHU regarding "the same Seder issues." (*Id.* ¶¶ 41-42). On May 1,

2012, the Inmate Grievance Resolution Committee sent plaintiff a decision, stating that according to D. Haug, the Food Service Administer, SHU inmates were not allowed the Seder meals. (*Id.* ¶ 43). Plaintiff appealed this determination, and on May 16, 2012, the Superintendent denied the grievance, stating that an investigation determined that the Passover Menu was followed to assure that all inmates received the required items and portions. However, the celebration for the Passover Seder was provided to "General Population inmates who requested it." (*Id.* ¶ 49). Because the grievants were in SHU, they could not participate. (*Id.*) Plaintiff's appeal to the Central Office Review Committee was also denied. (*Id.* ¶ 50).

## II.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving

party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## III. Religion Claims

### A. Legal Standards

#### 1. First Amendment

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987). This framework is one of reasonableness and is less restrictive than the standard ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to

legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89). An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted). In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The Second Circuit has examined the standard for analyzing a First Amendment religion claim. *Holland v. Goord*, 758 F.3d 215, 220-22 (2d Cir. 2014). In *Holland*, the court discussed the degree of burden required for a First Amendment claim. *Id.* at 220-21. The court noted that it has not been decided in this Circuit whether, to state a claim under the First Amendment, the inmate must show at the onset that the disputed conduct "substantially burdens his sincerely held religious beliefs." *Id.* (citing *Salahuddin, supra* at 274-75; *Ford*, *supra* at 592 (where the court assumed without deciding that the substantial burden test applies)). The court in *Holland* did not decide the issue, rather the court assumed the continued validity of the substantial burden test and analyzed the case accordingly.[6] *Id.* This court will follow the analysis in *Holland* and proceed to consider the First Amendment analysis, assuming that the substantial

---

[6] This finding was supported by the fact that the court's "precedent squarely dictat[ed] that Holland's religious exercise was unconstitutionally burdened," a point that the defendants in that case did not challenge on appeal. *Holland*, 758 F.3d at 221.

burden test is still valid. *See also Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016) (discussing the unsettled status of the substantial burden test).

Once a substantial burden is found, the court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, No. 02-CV-349, 2007 WL 1017102, at *4 (W.D.N.Y. March 30, 2007) (citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

### 2. Religious Land Use and Institutionalized Persons Act

RLUIPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, the plaintiff bears the burden of showing

that his religious exercise has been burdened and that the burden is substantial.[7] *Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002) (citing 42 U.S.C. § 2000cc-2(b)). The burden then shifts to the government to show that the burden furthers a compelling governmental interest ***and*** that it is the ***least restrictive*** means of achieving that interest. *Id.* The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007) (citing, *inter alia, Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)). Furthermore, the substantial burden test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004) (discussing in a footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'"). However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First Amendment protections).

---

[7] RLUIPA uses the term "substantial burden" in the language of the statute, removing any ambiguity with respect to the extent of the burden required to establish a statutory claim.

### B.    Application

#### 1.    RLUIPA

To the extent that plaintiff asserts RLUIPA claims against these defendants in either their individual or official capacities, the claims must be dismissed.  Plaintiff seeks declaratory, injunctive, and monetary relief.  However, RLUIPA does not authorize claims for money damages against state officers in either their individual or official capacities. *Holland*, 758 F.3d at 224.  Although a plaintiff could ordinarily pursue claims for injunctive or declaratory relief under RLUIPA against defendants in their official capacities, plaintiff is no longer incarcerated at Upstate.  His transfer to another facility moots claims for declaratory and injunctive relief against officers of *that facility*. *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (citing *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). *See also Wright v. New York State DOCCS*, 568 F. App'x 53, 55 (2d Cir. 2014); *Wood v. Captain Colon*, No. 3:13-CV-1467, 2016 WL 2930882, at *3 (D. Conn. May 18, 2016).

Plaintiff has sued only individuals at Upstate.  As discussed below, none of the current defendants had or have any authority to change the policy which prevented plaintiff from participating in the Seder.  Thus, even if plaintiff could have pursued a claim for declaratory or injunctive relief,[8] the claim would still be moot as against the

---

[8] If plaintiff had named an individual who had authority to change the DOCCS policy, it is possible that his RLUIPA claim would not be moot as to that individual in his or her official capacity. *See Smith v. Artus*, 522 F. App'x 82, 84 (2d Cir. 2013) (finding that plaintiff's transfer to a new facility did not render moot his claims for injunctive and declaratory relief under the First Amendment or RLUIPA when plaintiff was subjected to the same policy banning inmate demonstrative prayer in the recreation yard at his new facility, and there was a state-wide policy banning such conduct).  The court held that the plaintiff's claims were "clearly not moot." *Id.* (citing *Murphy v. Hunt*, 455 U.S. 478, 481

only defendants that he has named.

## 2. First Amendment

While plaintiff may no longer obtain injunctive relief as against these defendants (either under RLUIPA or the First Amendment), based upon his transfer out of Upstate, further analysis is required with respect to a First Amendment claim for damages. Defendants do not dispute either that (1) they failed to provide plaintiff the food required to celebrate the Seder portion of his Passover meal on the first two days of Passover (April 6 and 7) of 2012 or (2) that the Seder has a great deal of religious significance. Case law supports this finding. *See e.g. Riehl v. Martin*, No. 9:13-CV-439, 2014 WL 1289601 at \*10 n.18 (N.D.N.Y. March 31, 2014) (Passover Seder has been recognized as being greatly significant to Jewish adherents) (citing *Whitney v. Brown*, 882 F.2d 1068, 1074 (6th Cir. 1989)). Rather, they argue that none of the named defendants were personally involved in the policy which supported the denial of this portion of the meal, and that in any event, qualified immunity would prevent the assessment of damages.

### a. Personal Involvement

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-

---

(1982) (a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome). The court notes that plaintiff has not alleged that he has been subjected to the challenged policy since his transfer. In any event, the court notes that plaintiff would only be subjected to the policy if he were again confined in the Special Housing Unit.

24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id.* *See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id.* (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). This court finds

that even if the *Colon* factors are considered, and are all still viable, plaintiff has not alleged the requisite personal involvement of the named defendants so that any damages may be assessed against them.

Defendants point out that this court has already decided identical issues against the same defendants in *Weathers v. Rock*, No. 9:12-CV-1301, 2014 WL 4810309, at *1-10 (N.D.N.Y. Aug. 6, 2014) (Report-Recommendation), *adopted*, 2014 WL 4810309, at *1 (N.D.N.Y. Sept. 23, 2014). The defendants are correct regarding the issues of personal involvement and qualified immunity.[9] Mr. Weathers named essentially the same defendants and challenged the same deprivation of two Seder meals on April 6 and 7, 2012.

In *Weathers*, the defendants alleged that Mr. Weathers[10] was not served his Seder meals because the Seder is only celebrated in a congregate service, by "call-out" only, and inmates who are housed in SHU may not participate in congregate services.[11] Thus, those inmates were not allowed to participate in the Seder, which included being provided with the appropriate food in their SHU cells. Defendants argued that the policy was dictated by the Central Office, that none of the named defendants

---

[9] As discussed above, the mootness issue was slightly different for this plaintiff.

[10] These statements would apply to the plaintiff because he and Mr. Weathers were incarcerated at Upstate together. As stated above, this plaintiff mentions Mr. Weathers as another one of the individuals who was subject to the alleged violations.

[11] Plaintiff Weathers was not challenging the policy which prohibits SHU inmates from participating in congregate services. As the result of an earlier Report-Recommendation in *Weathers*, the district court in *Weathers* dismissed any claim that Weathers was not allowed to attend the Seder. (Dkt. No. 37 at 2 in 12-CV-1301). Mr. Celestin also does not challenge this policy, and the issue is only whether Mr. Celestin's rights were violated when he was not provided with the appropriate food to celebrate the Seder in his SHU cell.

participated in making the policy, nor could they override or change the policy.

In this case, defendants make the same argument. In support of their summary judgment motion, they have filed the Declaration of Cheryl V. Morris, the Director of Ministerial, Family, and Volunteer Services for the New York State Prison System. (Morris Decl.) (Dkt. No. 35-2). In her declaration, Director Morris states that, based upon a Memorandum dated March 21, 2012, by Jeff McKoy, Deputy Commissioner for Program Services, only inmates who were permitted to attend the "congregate Seder service would receive the Seder meals." (Morris Decl. ¶ 5). Because Upstate is an SHU facility, inmates may not congregate. (*Id.* ¶ 6).

Director Morris also specifically states that the decision preventing plaintiff and the other SHU inmates from receiving the Seder meals on April 6 and 7 of 2012 "was made by DOCCS Central Office, and all of the facilities were required to abide by this protocol and all other protocols articulated in the 2012 Passover Protocol Memorandum."[12] (Morris Decl. ¶ 7). Finally, Director Morris states that none of the defendants named in this action participated in the decision not to serve the Seder meals to the SHU inmates on the above dates, "and none of the defendants were permitted to override this protocol."[13] (Morris Decl. ¶ 8). Director Morris has attached the March

---

[12] This is the same "memo" that plaintiff showed the defendants to support his argument. However, as discussed below, plaintiff and the other inmates were interpreting the memo differently than prison officials.

[13] Director Morris points out that even though the SHU inmates, including plaintiff, did not get the Seder meal, they were served the Passover meal on both of the days in question. (Morris Decl. ¶ 9). Other than the issue with the salt and the hot water, discussed above, plaintiff does not dispute this statement.

21, 2012 Memorandum from Deputy Commissioner McKoy which addressed the Protocols for Passover 2012. (Morris Decl. Ex. A) (Dkt. No. 35-3).

The Memorandum states that "[o]n the first two evenings, Passover is observed by a Seder service and meal. . . . *Attendance* at the Seders will be by call-out only." (*Id.*) (emphasis added). The protocol also states that "Nutritional Services has distributed the menu for Passover. With the exception of the Seder meals, the Passover menu will be served at regular meal times." (*Id.*) There is no discussion of inmates who are in disciplinary housing and no specific prohibition on affording inmates in SHU the appropriate food in their cells. This "prohibition" is an interpretation of the protocol, based upon the belief that the Seder may only be celebrated with a congregate service, and that only those inmates who could "attend" the Seder were entitled to the appropriate meal.

Personal involvement requires that the individual who is, or becomes aware of, the violation, have the ability to take action to correct the problem. *See Conklin v. City of Suffolk*, 859 F. Supp. 2d at 441-42 (personal involvement requires knowledge and the ability to take action). In this case, defendants CO Patterson and CO Forbes were only involved in serving plaintiff's Passover meal on April 6th. (Compl. ¶ 15). CO Demers and CO Kroeger were the officers who served the Passover meals on April 7th. (Compl. ¶ 28). Although these four defendants were obviously involved in failing to provide plaintiff with the food that he claims was necessary,[14] none of these corrections officers

---

[14] In the complaint, plaintiff mentions that the Passover meal was also missing hot water, and that the hot water was never provided to him. (Compl. ¶¶ 19, 31). It does not appear that the hot water was part of the Seder, nor did it appear that this issue was significant.

would have had the ability to change the policy or provide plaintiff with any food that was not given to them to serve.

Plaintiff alleges that he spoke to Sergeant Debya when he made his rounds, and defendant Debya told plaintiff that the Jewish inmates were given everything "according to the kitchen." (Compl. ¶ 21). On April 7th, plaintiff claims that he asked defendant Debya again about the Seder meal, and defendant Debya stated that no inmates in SHU were allowed to participate in the Seder because "inmates would have to congregate." (Compl. ¶ 35). Plaintiff states that defendant Debya told plaintiff that the Superintendent ordered this policy. (Compl. ¶ 36). None of these officers, including Sergeant Debya, were involved in formulating the policy, or the interpretation of the protocol, that was responsible for plaintiff missing his two Seder meals. None of these officers would have been able to give plaintiff the food that he was requesting, either on April 6th or 7th of 2012. Thus, any claim for damages may be dismissed as against defendants Patterson, Forbes, Demers, Kroeger, and Sergeant Debya.

Defendant Haug is the Food Service Administrator. Plaintiff has apparently named defendant Haug because, after plaintiff filed a grievance about missing the two meals, defendant Haug responded to the grievance investigation. (Compl. ¶ 43). Plaintiff states that the Inmate Grievance Resolution Committee ("IGRC") response states that "Per D. Haug," Special Housing Inmates were not allowed the Seder Meals." (*Id.*) Although plaintiff cites "Exhibit C," there were no exhibits attached to the

complaint.[15]

However, it is clear, as it was in Mr. Weathers's case that, at the time defendant Haug became aware of plaintiff's complaint, the 2012 Seder was over, and defendant Haug had nothing to do with depriving plaintiff of the required food. At that time, although defendant Haug explained the policy to the grievance committee,[16] defendant Haug had no ability to rectify the situation, and thus, as a supervisor, was not "personally involved" in the alleged constitutional deprivation. Thus, any remaining claim for damages may be dismissed as against defendant Haug.

Plaintiff has also sued Superintendent Rock. Even though defendant Debya presumed that the Superintendent had the ability to change the meal that was served to plaintiff, it does not appear that defendant Debya was correct, and the policy was created and implemented by the DOCCS Central Office in Albany. (Morris Decl. ¶ 8). In addition, there is no indication that Superintendent Rock became aware of the issue at any time when he could have changed the situation even if he was authorized. Thus, defendant Rock was not "personally responsible" for any alleged constitutional violations, and ny claim for damages may be dismissed as against defendant Rock.

---

[15] The court notes that Mr. Weathers did attach the relevant exhibit to his complaint, thus, the court has had the opportunity to review it. Mr. Celestin states that the grievances were consolidated, so the court assumes that the documents cited by both plaintiffs are the same.

[16] The term "per" does not necessarily indicate (as plaintiff believes), that defendant Haug had any responsibility for formulating the policy. It is now clear that he did not have any such responsibility. The language in the grievance response only indicates that he answered the investigator's question regarding the policy.

### b.    Qualified Immunity

As this court found in *Weathers*, even assuming that some or all of the defendants were personally involved in the alleged constitutional violation, qualified immunity would defeat plaintiff's claim.  The court will repeat its analysis from *Weathers* because plaintiff Celestin has made the same claims against most of the same defendants.

Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In evaluating whether a right was clearly established at the time a civil rights defendant acted, the court must determine: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and, (3) whether under pre-existing law a reasonable defendant official would have understood that his or her acts were unlawful." *African Trade & Information Center, Inc., v. Abromaitis*, 294 F.3d 355, 360 (2d Cir. 2002) (citations omitted).  Even if the constitutional privileges are clearly established, a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (citing *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir. 1990)).

In this case, in 2012, it was well settled that inmates retained religious rights under the First Amendment and under RLIUPA, and that prison inmates had a "clearly

established right 'to a diet consistent with [their] religious scruples.'" *Holland*, 2014 WL 3360615, at *4. This right has been recognized "'as early as 1975.'" *Id.* (citing *McEachin v. McGuinnis*, 357 F.3d at 203 (citing *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975) (kosher meals)). In 2004, the Second Circuit found that an inmate's free exercise rights would be substantially burdened when prison officials denied his request for a meal to celebrate the Eid ul-Fitr feast. *Ford*, 352 F.3d at 593-94.

In *Ford*, the court also determined that an individual's sincerely held belief was entitled to constitutional protection, notwithstanding disagreement over the belief among other members of that religion. 352 F.3d at 589. In *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984), the Second Circuit held that "[t]he freedom to exercise religious beliefs cannot be made contingent on the objective truth of such beliefs." In *Jackson v. Mann*, 196 F.3d 316, 321 (2d Cir. 1999), the court held that the question of whether Jackson's beliefs were entitled to Free Exercise protection turned only on whether those beliefs were "sincerely held," not on the "ecclesiastical question" of whether Jackson was, in fact, a Jew under Jewish law. In *Ford*, the court stated that "the opinion of DOCS religious authorities cannot trump the plaintiff's sincere belief." 352 F.3d at 590-91. The court found that "any perceived lack of objective validity to Ford's belief [that the Eid ul Fitr feast was critical to his observance as a Muslim] did not entitled defendants to summary judgment. *Id.* at 591.

In this case, the Passover Protocol states that the Seder must be celebrated in a

congregate service, "by call-out" only.[17]  Since plaintiff was in SHU, he could not

*attend* the Seder, and therefore, could not get the Seder meal.[18]  Plaintiff states in his

complaint that he told the Sergeant that the "Seder Rituals" could be practiced on a

"personal basis," and that he did not have to *attend* the service in order to obtain the

appropriate food and celebrate the Seder in his cell. (Compl. ¶ 37).  He also states that

when Mr. Weathers was incarcerated at Fishkill Correctional Facility ("Fishkill"), the

officials allowed another inmate to have the Seder portion of his meal in his cell.[19]

(Compl. ¶ 52).  Based on *Ford* and *Jackson*, it was well-established that the fact that

defendants believed that the Seder could only be celebrated in a congregate service, did

not affect plaintiff's claim that he sincerely believed that he could have celebrated the

Seder in his own cell.  Thus, plaintiff's right was well-established.

This does not end the inquiry into qualified immunity.  The court must still

examine whether it was "objectively reasonable" for the defendants to believe that their

acts did not violate plaintiff's rights.  With respect to the individuals who served

plaintiff his Passover meals on April 6th and 7th, (even assuming that they were

"personally involved"), there was no way that they could have known they were

---

[17] The 2012 Protocol did not even mention SHU.  The protocol only states that participation in the Seder was by "call out" only.  The prison officials have interpreted the protocol as preventing plaintiff from obtaining Seder meals in his cell.

[18] While the Second Circuit has determined that *keeplock* status does not automatically deprive inmates of the opportunity to attend congregate services, it has been determined that inmates in SHU do not have that right. *Compare Salahuddin*, 993 F.2d at 308 (keeplock), with *Smith v. Artus*, 2010 WL 3910086 at *20-21 (SHU status at Upstate    a disciplinary facility).

[19] This apparently occurred before Mr. Weathers was transferred to Upstate. (Compl. ¶ 52).

violating plaintiff's religious rights. They were only allowed to deliver the food that they were given to deliver, and plaintiff was getting a meal that was kosher for Passover, notwithstanding that it was lacking a portion of the meal that plaintiff believed was critical.

The supervisory officials were basing their actions on their interpretation of the protocol, issued by the Central Office. As stated by Director Morris, these individuals did not have the authority to change the protocol. (Morris Decl. ¶ 8). While plaintiff's belief that he could participate in the Seder by having the food brought to his cell may certainly have been "religious" in his view and entitled to protection, the defendants who had a different view, would not have understood that the failure to provide the Seder meal in plaintiff's cell was inconsistent with his religious beliefs. As stated above, there was no constitutional violation in refusing plaintiff's *attendance* at the Seder. Plaintiff does not argue otherwise. It would have been reasonable for each of these defendants to refuse such a request or even to ignore such a request. Until plaintiff spoke to the officers who served his meal on April 6th and 7th, there was no indication that plaintiff may have been requesting that he be allowed to participate in the Seder by having the appropriate food brought to his cell. By then, the defendants were not in a position to remedy the situation.

Thus, although plaintiff may have had a well-established right to have the Seder meal brought to his cell, based on his individual belief that he could celebrate the Seder by himself, it was objectively reasonable for all the defendants to believe that they were not violating plaintiff's rights, based on a reasonable interpretation of the 2012 protocol

from DOCCS Central Office.  Thus, any remaining claim for damages may be dismissed as against all the defendants.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 64) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 20, 2016

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**